**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1308
_____

BOARD OF TRUSTEES OF THE NATIONAL ELEVATOR
INDUSTRY HEALTH BENEFIT PLAN

v.

BERNARD MCLAUGHLIN,
                                        Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 3-12-cv-04322)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2014
_____

Before: RENDELL, GREENAWAY, JR. and BARRY, Circuit Judges

(Filed: October 1, 2014)

_____

OPINION
_____

BARRY, Circuit Judge

Appellant Bernard McLaughlin appeals the order of the District Court granting

summary judgment in favor of the Board of Trustees of the National Elevator Industry

Health Benefit Plan (the "Board") on the Board's claim for reimbursement of money paid by the National Elevator Industry Health Benefit Plan (the "Plan") toward McLaughlin's medical expenses. We will affirm.

I.

The facts of this case are undisputed. In broad summary, McLaughlin is a participant in the Plan, a self-funded, ERISA-governed, multi-employer employee welfare benefit plan of which the Board is a fiduciary. In January 2009, McLaughlin was injured in an ATV ("all-terrain vehicle") accident, and the Plan thereafter paid approximately $47,590.24 in medical benefits on his behalf. McLaughlin filed personal injury claims against a third party, and, in December 2011, that case settled.

The Plan language[1] provides as follows:

> The Plan has a right to first reimbursement out of any recovery. Acceptance of benefits from the Plan for an injury or illness by a covered person, without any further action by the Plan and/or the covered person, constitutes an agreement that any amounts recovered from another party by award, judgment, settlement or otherwise, and regardless of how the proceeds are characterized, will promptly be applied first to reimburse the Plan in full for benefits advanced by the Plan due to the injury or illness . . . .

(App. at 21.) The Plan also provides that it "reserves the right to make all decisions with respect to its rights of subrogation and recovery," and that it "has the right to treat any

---

[1] The parties cite to language in the Summary Plan Description as the language of the Plan. As the Supreme Court has recognized, statements in a summary plan description "provide communications with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan." Cigna Corp. v. Amara, 131 S.Ct. 1866, 1878 (2011). Because the parties have consistently treated this language as if it came from the Plan, however, we may do so as well. US Airways, Inc. v. McCutchen, 133 S.Ct. 1537, 1543 n.1 (2013) ("Because everyone in this case has treated the language from the summary description as though it came from the plan, we do so as well.").

2

benefits provided as an advance and to deduct such amounts from future benefits to which the covered person or an immediate covered family member may otherwise be entitled until the amount due the Plan has been satisfied." (Id. at 22.)

Following unsuccessful attempts to collect reimbursement from McLaughlin, the Plan filed this action in July 2012 pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). McLaughlin filed a counterclaim, alleging that after the tort claims settled, the Plan unlawfully refused to pay medical expenses for himself and his family unrelated to the ATV accident. The parties filed cross motions for summary judgment, and, on January 24, 2014, the District Court granted summary judgment to the Board. The Court concluded that the Board successfully established that the language of the Plan gave rise to an "equitable lien by agreement," recognized by the Supreme Court as an equitable remedy under ERISA § 502(a)(3) in Sereboff v. Mid Atl. Med. Servs, Inc., 547 U.S. 356 (2006). The Court also held that New Jersey's Collateral Source Statute (the "NJCSS"), N.J. Stat. Ann. § 2A:15-97, which McLaughlin argued prohibited him from recovering medical expenses from the third party, was pre-empted by ERISA and that, in any event, the language of the Plan controlled. The Court rejected, as well, McLaughlin's affirmative defense of laches and found McLaughlin's argument that he had no duty to reimburse the plan to be "unpersuasive." (App. at 7 n.3.)

McLaughlin now appeals, arguing that the District Court erred in concluding that the Plan had an equitable lien against his tort recovery because there was no nexus between the funds received by him (which excluded compensation for medical expenses) and the funds expended by the Plan (which were solely for medical expenses).

3

McLaughlin also argues that the Court erred in concluding that the NJCSS was pre-empted by ERISA and in rejecting his other arguments.

## II.

The District Court had jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's decision granting summary judgment. Funk v. Cigna Gr. Ins., 648 F.3d 182, 190 (3d Cir. 2011). Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

ERISA § 502(a)(3) provides that a fiduciary may bring a civil action: "to obtain . . . equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). In Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 363 (2006), the Supreme Court held that an ERISA fiduciary may sue a beneficiary for reimbursement of medical expenses, pursuant to the terms of the ERISA plan, where the fiduciary seeks recovery "through a constructive trust or equitable lien on a specifically identified fund," not from the beneficiary's general assets. In Sereboff, an ERISA plan paid medical expenses to two beneficiaries following an automobile accident, and then sought reimbursement from the beneficiaries after they received a tort settlement related to the accident. Id. at 360. The ERISA plan language provided that when a beneficiary was "sick or injured as a result of the act or omission of another person or party" and received benefits from the plan, the beneficiary was required to reimburse the plan for

4

those benefits from "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)." Id. at 359 (internal quotation marks omitted). While the beneficiaries in Sereboff argued that the plan's claim was not equitable and thus not cognizable under ERISA, the Court held that the language of the plan gave rise to an "equitable lien by agreement" permitting the plan to obtain reimbursement from the beneficiaries' tort settlement. Id. at 364-65.

In US Airways, Inc. v. McCutchen, 133 S.Ct. 1537, 1546 (2013), the Court made clear that an "equitable lien by agreement . . . both arises from and serves to carry out a contract's provisions." In McCutchen, as in Sereboff, an ERISA plan beneficiary received a tort settlement related to an injury, and, pursuant to the terms of the plan[2], the ERISA plan sought reimbursement for medical expenses it had paid in connection with that injury. Id. at 1543. The beneficiary argued that "in equity," the ERISA plan "could recoup no more than an insured's 'double recovery' – the amount the insured has received from a third party to compensate for the same loss the insurance covered." Id. at 1545 (emphasis added). The beneficiary argued that, pursuant to this "double recovery" rule, a principle of unjust enrichment, the ERISA plan's reimbursement would be limited "to the share of [the beneficiary's] settlements paying for medical expenses; [the beneficiary] would keep the rest (*e.g.*, damages for loss of future earnings or pain and suffering), even though the plan gives [the employer] first claim on the whole third-party

---

[2] The plan at issue in McCutchen provided that when a beneficiary's claim arose as the result of the "negligence, willful misconduct, or other actions of a third party," the beneficiary was required to reimburse the employer for amounts paid for claims "out of any monies recovered from [the] third party . . . ." Id. at 1543.

5

recovery." Id. In other words, the beneficiary in McCutchen argued that, at equity, because the ERISA plan only paid for medical expenses, it could only seek reimbursement from him to the extent his settlement compensated him for medical expenses.[3] The Supreme Court rejected the beneficiary's argument, holding that the language of the ERISA plan governed, giving the plan first claim to his entire recovery. Id. at 1546-48. The Court confirmed that where an equitable lien by agreement exists, "[t]he agreement itself becomes the measure of the parties' equities," and held that "enforcing the lien means holding the parties to their mutual promises," which includes "declining to apply rules . . . at odds with the parties' expressed commitments." Id. at 1546, 1548.

In this case, just as in McCutchen, the language of the Plan plainly does not limit the Plan's ability to recover its expenditures for medical expenses to an award for medical expenses only, instead granting the Plan a right to reimbursement "regardless of how the proceeds are characterized." (See App. at 21.) While McLaughlin argues that such a result is inconsistent with the concept of equitable restitution, at issue here is an equitable lien by agreement, not equitable restitution. The Supreme Court's decision in McCutchen could not be clearer in holding that, under such circumstances, the language of the ERISA plan governs what the plan can recover.

McLaughlin argues that he was prohibited from claiming medical expenses in his tort action due to the NJCSS, which provides that in a civil action brought for personal

---

[3] In McCutchen, it appears that the tort recovery included compensation for medical expenses as well as other damages.

6

injury, where the "plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor," this must be "disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered . . . ." N.J. Stat. Ann. § 2A:15-97. We, however, are in agreement with the District Court that, regardless of the operation of the NJCSS, the Plan's language requiring McLaughlin to reimburse the Plan from the proceeds of his tort settlement is clear and controlling.

While McLaughlin appears to have assumed that the NJCSS would preclude recovery of medical expenses, given the Plan's right to reimbursement from his recovery, it is far from clear that the Plan's payments on his behalf would have constituted a "collateral source" of benefits under the NJCSS, had the issue actually been presented to a court. In Taransky v. Sec'y of U.S. Dept. of Health & Human Servs., --- F.3d --- , 2014 WL 3719158, at *8 (3d Cir. July 29, 2014), for example, we held that a tort plaintiff was responsible for reimbursing Medicare from the proceeds of her tort settlement, despite her argument that the NJCSS precluded her from recovering medical expenses (and despite the fact that she had obtained an allocation order indicating that no portion of her settlement was attributable to medical expenses). We held that the NJCSS did not prevent Medicare from seeking reimbursement, as the Medicare payments, "because of their conditional nature, [did] not constitute a collateral source of benefits under the NJCSS." Id. Here, the Plan's payments on McLaughlin's behalf were similarly conditional, given the plain language of the Plan which contractually obligated McLaughlin to reimburse the Plan following a personal injury settlement. Just as we held

7

in <u>Taransky</u> that the tort plaintiff "may not rely on the NJCSS to avoid reimbursing the Government for Medicare payments it has made on her behalf," <u>id.</u>, so too here, McLaughlin cannot rely on the NJCSS to avoid reimbursing the Plan, as he was contractually obligated to do so.[4]

We have carefully considered McLaughlin's other arguments and find them to be without merit. While McLaughlin argues that he and his attorneys were under no duty to protect the Plan's interests, it is clear that the plain language of the Plan contractually obligated McLaughlin to reimburse the Plan. (<u>See</u> App. at 21 ("[a]cceptance of benefits . . . constitutes an agreement that any amounts recovered from another party . . . will promptly be applied first to reimburse the Plan . . . .") In addition, for the same reasons stated by the District Court, we reject McLaughlin's affirmative defense of laches.

IV.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of the Board.

---

[4] Given our conclusion that the Plan's language created an enforceable equitable lien by agreement regardless of the operation of the NJCSS, we need not address the issue of ERISA pre-emption, although we note that we have elsewhere held that ERISA does pre-empt the NJCSS. <u>See</u> <u>Levine v. United Healthcare Corp.</u>, 402 F.3d 156, 166 (3d Cir. 2005).

8